IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Wormley,             :
         Petitioner       :
                           :
        v.                  :     No. 89 C.D. 2022
                           :     Submitted: August 12, 2022
Air Wisconsin Airlines (Workers'  :
Compensation Appeal Board),    :
         Respondent   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT         FILED:  November 22, 2022


Barbara Wormley (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied her claim petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant was not acting in the course and scope of her employment when she sustained an injury traveling to work and in uniform.  Claimant asserts that the Board erred because her travel by train was a reasonable way for her to access her employer's premises.  We affirm the Board.

## Background

Claimant works as a flight attendant for Air Wisconsin Airlines (Employer).  On December 5, 2019, Claimant fell on a Southeastern Pennsylvania Transportation Authority (SEPTA) train platform attempting to get on a train on her way to work.  She sustained injuries to her left shoulder, left leg, left hip, upper back, lower back, and right knee.

On January 8, 2020, Claimant filed a claim petition alleging a work injury. The claim petition was assigned to a WCJ.

In support of her claim petition, Claimant presented her testimony by deposition and before the WCJ via video. Claimant testified that she has worked as a flight attendant for Employer for approximately 13 years. For 12 of those years, she was based out of Philadelphia International Airport. In early 2019, Claimant's hub changed from Philadelphia to Chicago O'Hare. She had the option to relocate to Chicago, but she chose to stay in Philadelphia. Consequently, Claimant had to commute from Philadelphia to Chicago.

Claimant testified that she would book a flight from Philadelphia to Chicago, but if the flights were full, she would fly standby. Her preference was to fly to Chicago the day before she was scheduled to work and get a hotel or sleep in a chair at the airport. Claimant was not paid for her time commuting.

Claimant testified that she lives in northeast Philadelphia. To get to the Philadelphia Airport, she usually boarded the SEPTA train at Forest Hills, which was approximately two blocks from her house, and took the train to Jefferson Station in Center City Philadelphia. From there, she would board another train to the airport.

Claimant testified that she was scheduled to work in Chicago on December 6, 2019. Because she could not find any flights departing Philadelphia to Chicago early on December 6, 2019, she decided to fly to Chicago the day before, on a 3:20 p.m. or 4:56 p.m. flight.

On December 5, 2019, Claimant had a doctor's appointment at Jefferson Hospital and then visited her niece, who was a patient at the hospital. From the hospital, she walked to Jefferson Station to get a train to the airport for the 3:20 p.m. flight to Chicago. Claimant was wearing her uniform because "[it is] just much

2

easier to get through [security at the airport]." Claimant Deposition at 31; Reproduced Record at 142a (R.R. __). Moving out of the way of another passenger, Claimant stepped into the gap between the train and the platform and fell. Claimant testified that she "screamed" because "[t]he pain was excruciating" in her shoulder, arm, lower back, thigh, and buttock. Claimant Deposition at 33; R.R. 144a. Claimant was taken to the emergency room at Jefferson Hospital for treatment. Afterwards, she had to use a walker to get around her house for three weeks.

Claimant testified that on December 11, 2019, she saw Dr. Simon Newsom, who referred her to Dr. Okon, a sports medicine doctor. Dr. Okon advised Claimant that the injury had to run its course. Claimant also treated with Dr. Scott Pello, who prescribed Gabapetin and Lidocaine for Claimant's pain.

Claimant testified that she has only achieved partial relief. As a result of the injury to her left shoulder, her left arm will not raise up all the way. She cannot reach her right arm to her back, and she has pain in her shoulder down into her right arm. She also has soreness in her left elbow. Her low back pain leaves her unable to sit or stand long, and she cannot walk more than three blocks. Claimant testified that she does not sleep and cannot lift anything. As a consequence, Claimant does not believe she can return to her job as a flight attendant. She began receiving retirement social security as of November 18, 2018.

On cross-examination, Claimant stated that Employer did not reimburse her for hotels or flights, but it has agreements with other airlines for flight attendants. This allows her to fly out of different airports, other than Philadelphia. Claimant agreed that it is up to her to figure out the logistics of getting to Chicago, and Employer does not assist her with that. Further, Employer does not reimburse

Claimant for any expenses related to her train or cab fares to the airport. Claimant testified that she could have driven to Chicago to go to work, had she so desired.

Claimant acknowledged that her job as a flight attendant never changed. Rather, her commute changed. Claimant acknowledged that she could have traveled to Chicago without wearing her uniform, but she chose to wear it because "[it is] much easier to get through [the Transportation Security Administration's] known crew member [screening], which is where crew members check in through." Notes of Testimony, 11/16/2020, at 44 (N.T. __); R.R. 100a.

Robert Frish, Chief Operating Officer, testified for Employer. He explained that Employer provides service for other airlines by contract. When Employer's contract work for American Airlines ended, Employer began providing service to United Airlines, which required Employer to change its hub and crew locations. Employer closed its bases in Philadelphia and Norfolk, Virginia, and opened bases in Milwaukee, Chicago O'Hare, Washington Dulles, and Columbia, South Carolina.

Frish testified that the collective bargaining agreement allows crew members to be reimbursed for moving expenses. Had Claimant decided to relocate to Chicago, she would have been reimbursed for the expense of that move. Since she decided not to relocate, "no arrangements [were] made." N.T. 17; R.R. 73a. In other words, it was up to Claimant to get herself to work. Frish testified that "[i]t does not matter to us how [crew members] get [to their hub] as long as [they are] at work when scheduled[.]" N.T. 24; R.R. 80a.

Frish explained that flight attendants report to duty 45 minutes prior to their first scheduled flight for the day. On December 5, 2019, the day of Claimant's injury, she was not on the clock. Frish stated that many flight attendants and pilots

4

prefer to travel in uniform to bypass security protocol and to access certain parts of the airport.

On cross-examination, Frish stated that Employer does not "control where people live." N.T. 28; R.R. 84a. Employer does not mandate that crew members live near their base airport. Commuting is accepted in the industry. Frish did not agree that commuting was at "no cost" to Claimant, explaining that it depended on how Claimant traveled. *Id.* He explained that if Claimant bought a ticket on American Airlines, she would pay the price of the ticket. If she used a cabin reciprocal jump seat agreement, there was a cost. Likewise, if she used "non-[reciprocal] travel benefits," *e.g.*, to upgrade to first class, there was an added cost. *Id.*

With regard to the wearing of the uniform, Frish testified that flight attendants often wear their uniform for personal travel because it makes it easier to move around the airport. Wearing the uniform has nothing to do with commuting, and Employer does not require its employees to wear uniforms when commuting.

### WCJ Decision and the Board Adjudication

The WCJ found the testimony of Claimant and Frish credible. Further, the WCJ found that Claimant was not a traveling employee, explaining that she had a fixed place of employment at Chicago O'Hare Airport. She chose to live in Philadelphia and commute to Chicago O'Hare. The WCJ found that when Claimant was injured on December 5, 2019, she was commuting to work and was not on Employer's premises. Claimant was responsible for getting herself to the airport to get a flight to Chicago O'Hare. Employer did not provide transportation for its employees to and from work; it only provided general flight privileges from airport to airport.

5

Based upon these findings, the WCJ concluded that Claimant did not meet her burden of proving that she was in the course of employment on December 5, 2019, when she was injured at the train station. Therefore, the WCJ denied her claim petition.

The Board affirmed the WCJ. It explained that Claimant did not sustain her injuries on Employer's premises or while engaged in the furtherance of Employer's business or affairs. On December 5, 2019, Claimant was attempting to board a train to the airport, but her shift as a flight attendant did not begin until 8:00 a.m. the next day. Frish's credited testimony established that Claimant was responsible for arranging her own transportation to the base hub and that a crew member only goes on duty 45 minutes before her scheduled flight. Accordingly, at the time of her injury, Claimant was still off duty from her work as a flight attendant and commuting to work.

Claimant petitioned for this Court's review.

**Appeal**

On appeal,[1] Claimant raises one issue, *i.e.*, that the Board erred in concluding that her injury did not occur in the course and scope of her employment. She argues that her injury was compensable because she was on her way to work, in uniform, and traveling by train to the Philadelphia Airport to fly to Chicago O'Hare Airport, which was a reasonable way for her to access Employer's premises. In support of her argument, Claimant cites *US Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 221 A.3d 171 (Pa. 2019), and *Stewart v. Workers'*

---

[1] This Court reviews the Board's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167, 1169 n.1 (Pa. Cmwlth. 1998).

6

*Compensation Appeal Board (Bravo Group Services, Inc.)*, 258 A.3d 584 (Pa. Cmwlth. 2021).

Employer counters that Claimant was not engaged in furthering the activities of Employer when she was injured. The injury occurred the day before she was scheduled to work out of Chicago O'Hare. Additionally, Employer states that the train station is not part of its premises because it did not issue any directive or exercise control over the mode of its employees' transportation to and from work.

To be eligible for compensation, an injured employee must establish that his injury occurred in the course of employment. Section 301(c)(1) of the Workers' Compensation Act (Act)[2] states, in pertinent part, as follows:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto . . . . The term "*injury arising in the course of his employment*," as used in this article . . . shall include all [ ] injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.*

77 P.S. §411(1) (emphases added).

Case law has construed Section 301(c)(1) to mean that an injury arises in the course of employment in two distinct situations. First, an injury is compensable if it occurs while the claimant is furthering the business or affairs of

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

her employer, without regard to where the injury occurs. Second, the claimant may be entitled to compensation if the injury occurs on the employer's premises. Specifically, compensation may be awarded if the employee

> (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977). Whether an employee is injured in the course of employment is a question of law to be determined on the basis of the WCJ's findings of fact. *Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151, 153 (Pa. Cmwlth. 2001).

Claimant does not assert that she was furthering Employer's business when she was injured. Rather, Claimant argues that she was injured on Employer's premises. Employer responds that because it does not own, maintain, or control the train or the train platform, and the train is not a part of Employer's business, Claimant did not show an injury on its premises. We agree with Employer.

Whether the injury occurred on the employer's "premises" under Section 301(c)(1) of the Act turns on whether the site of the accident is so connected with the employer's business as to form an integral part thereof. *Epler v. North American Rockwell Corporation*, 393 A.2d 1163, 1165-67 (Pa. 1978). In this analysis, "the critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [its] employees in performance of their assigned tasks." *Id*. at 1167.

8

Here, Claimant fell on a train platform. The train and its platform were not a place where Employer's "business or affairs are being carried on," or where Claimant's "presence thereon was required by the nature of her employment." Section 301(c)(1) of the Act, 77 P.S. §411(1). Claimant was a commuting employee, and it did not matter how she got to work. As Claimant stated, it was up to her "to figure out the logistics of getting to work in Chicago." WCJ Decision at 5, Finding of Fact No. 1.*l.* To get to the Philadelphia Airport in order to board a flight for Chicago, Claimant would take a train, and on occasion, she would take a taxi or a bus part of the way. Claimant presented no evidence that her presence on the train was required by the nature of her employment.

Nevertheless, Claimant argues that this case is governed by *US Airways, Inc.*, 221 A.3d 171, and *Stewart*, 258 A.3d 584. In *US Airways, Inc.*, an airline employee was injured while riding an airport shuttle bus to an employee parking lot after her shift ended. The employer did not own the shuttle bus or the parking lot and disputed liability for the claim. The employer argued that because the employee was injured on the shuttle bus, she was not injured on its "premises" under Section 301(c)(1) of the Act. The Supreme Court rejected this argument, reasoning that an employer's premises under Section 301(c)(1) of the Act are not limited to property that the employer legally owns or physically controls. It concluded that the airport parking lot was integral to the employer's business operations because the employee had to use the shuttle service to enter the workplace. As such, the Supreme Court held that the employee was injured on the employer's "premises" within the meaning of Section 301(c)(1) of the Act.

In *Stewart*, the claimant performed janitorial work for his employer at the Smith Kline building in King of Prussia. To get to work, the claimant took public

9

transportation from his home in Philadelphia to the Gulph Mills Station. From the train station, he took a shuttle van to the front entrance of the Smith Kline building. Smith Kline owned and operated the shuttle van. The claimant was not required to take the shuttle van, and he was not paid for his time while riding the shuttle van. One day, while exiting the shuttle van in front of the Smith Kline building and before starting his shift, the claimant fell to the ground, injuring his left foot and ankle.

This Court determined that the claimant showed a premises injury. The claimant slipped and fell a few feet from the front entrance of the building where "the employee's presence thereon [was] required by the nature of his employment." *Stewart*, 258 A.2d at 593 (quoting Section 301(c)(1) of the Act, 77 P.S. §411(1)). Additionally, the claimant's accident took place in an area integral to the employer's workplace, a few feet from the doors of the building where he worked. This area constituted a reasonable means of ingress to the work site. Further, the claimant slipped and fell to the ground while stepping down off the shuttle van, and the ground where the claimant landed constituted the premises.

Claimant argues that the train is similar to the shuttle bus in *US Airways, Inc.* and *Stewart.* Although not owned or controlled by Employer, Employer "caused the area to be used by the employees to perform their job." Claimant Brief at 19-20. However, the WCJ found that "[i]t [does not] matter to [] Employer how the flight attendant gets to work[,]" WCJ Decision at 6, Finding of Fact No. 3.e, and Claimant does not dispute this finding. Claimant presented no evidence that the train station had any relation to the operation of Employer's business or that Employer had any obligation to provide Claimant with access to the train or transportation to the airport. Claimant was not reimbursed for any travel and could have chosen any means to get to the Philadelphia Airport, or, for that matter,

10

to Chicago. The trains were not provided for airport employees, as in *US Airways, Inc.*, and Claimant was not entering or exiting her workplace within a reasonable time before or after her shift, as in *Stewart*. The Board appropriately distinguished *US Airways, Inc.* and *Stewart*. Claimant's presence at the train station was not required by the nature of her employment. She could have travelled in any number of ways to get to her assigned workplace in Chicago. The Board did not err in holding that Claimant was not injured on Employer's "premises" under Section 301(c)(1) of the Act.

## Conclusion

For the foregoing reasons, we conclude that Claimant did not sustain an injury on Employer's premises for purposes of Section 301(c)(1) of the Act, 77 P.S. §411(1). Accordingly, the adjudication of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Wormley, : 
          Petitioner : 
         : 
        v. :     No. 89 C.D. 2022
         : 
Air Wisconsin Airlines (Workers' : 
Compensation Appeal Board), : 
          Respondent : 

**ORDER**

AND NOW, this 22nd day of November, 2022, the adjudication of the Workers' Compensation Appeal Board dated January 14, 2022, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita